UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDREW W. B.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | CASE NO. 3:24-cv-05297-GJL<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 4. This matter has been fully briefed. *See* Dkts. 11, 15, 16.

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is **REVERSED** and **REMANDED** for further administrative proceedings.

I. PROCEDURAL HISTORY

Plaintiff's application for Disability Insurance Benefits (DIB) was denied initially and following reconsideration. AR 93–94. ALJ Malcolm Ross held hearings on Plaintiff's claim in

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 1

October 2019 (AR 31–44) and February 2020 (AR 45–81) before issuing a decision finding Plaintiff not disabled in March 2020 (AR 15–30). Plaintiff appealed to this Court and, in January 2022, U.S. Magistrate Judge Theresa Fricke reversed ALJ Ross' decision. AR 448–63. On remand, ALJ Allen Erickson (the ALJ) held a hearing on September 26, 2023. AR 388–420. He issued a decision finding Plaintiff not disabled on December 15, 2023. AR 370–87. Plaintiff failed to file exceptions with the Appeals Council, making the ALJ's decision Commissioner's final decision subject to judicial review. *See* 20 C.F.R. § 404.984(a). On April 18, 2024, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Defendant filed the sealed AR in this matter on June 17, 2024. Dkt. 6.

## II.   BACKGROUND

Plaintiff was born in 1968 and was 48 years old on his alleged onset date of March 8, 2016. *See* AR 373, 502. His date last insured is June 30, 2021. AR 373–74.

In his March 2020 decision, ALJ Ross found Plaintiff had the following severe impairments: prior spinal fusion at L5-S1, mild degenerative change of the lumbar spine and thoracolumbar junction, cervical degenerative disc disease, and myofascial pain. AR 20. However, in the December 2023 decision reviewed in the instant matter, the ALJ found Plaintiff had only one severe impairment: status post lumbar discectomy and fusion. AR 375. The ALJ found Plaintiff was not disabled because he had the following Residual Functional Capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ladders, ropes, or scaffolds. He could occasionally crawl. He could tolerate occasional exposure to vibration and extreme cold temperatures.

AR 377.

### III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In his opening brief, Plaintiff contends the ALJ erred in (1) assessing the medical evidence, including the Step Two finding and several medical opinions, (2) assessing his subjective symptom testimony, (3) assessing lay witness evidence, and (4) in formulating the RFC. Dkt. 11. Plaintiff requests the Court remand for an award of benefits or, in the alternative, order a new ALJ be assigned on remand. *Id.* at 19.

**A.   Step Two**

Plaintiff argues the ALJ erred in omitting myofascial pain syndrome as a medically determinable impairment. Dkt. 11 at 6–7. ALJ Ross found myofascial pain syndrome a severe medically determinable impairment in his 2020 decision (AR 20) while ALJ Erickson did not without further explanation (AR 375).

An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An "impairment must be established by objective medical evidence from an acceptable medical source," and a "statement of symptoms, a diagnosis, or a medical opinion" is insufficient to establish a medically determinable impairment. *Id.*

Judge Fricke noted in her decision that myofascial pain syndrome is "a chronic pain disorder where pressure on sensitive points in the muscles (trigger points) causes pain in seemingly unrelated parts of the body." AR 460 (citations omitted). One source describes the

condition as the "irritation of the muscles and fascia of the back and neck causing acute and chronic pain not associated with any neurologic or bony evidence of disease; presumed to arise primarily from poorly understood changes in the muscle and fascia themselves." Myofascial Syndrome, Stedmans Medical Dictionary 885910 (Nov. 2014).

To the Court's knowledge, the Commissioner has not issued rulings or regulations describing what diagnostic techniques adequately demonstrate an impairment of myofascial pain syndrome. The syndrome is not one over which there is much consensus in the medical community. *See* Myofascial pain—Background, Attorneys Medical Advisor § 74:44 (updated Aug. 2024) ("Myofascial pain is now considered the most common source of musculoskeletal pain by some authors, although others continue to question its very existence . . . .").

Plaintiff summarizes two treatment notes suggesting he has such an impairment. Dkt. 11 at 6–7. In November 2019, Dr. Zachary Abott "assess[ed]" "chronic upper thoracic region pain," and noted that "based on [Plaintiff's] description of symptoms this would seem to be myofascial in nature although it has gotten more severe and debilitating over time." AR 364. In December 2019, Dr. Abbott noted Plaintiff "report[ed] chronic upper thoracic pain that would seem to be myofascial in nature" and noted imaging revealed no "pathology in the area where he reports his pain." AR 361.

It is, at the very least, plausible that this evidence establishes chronic or myofascial pain syndrome as an impairment. Dr. Abbott is an acceptable medical source. *See* 20 C.F.R. § 404.1502(a)(1). The first note suggests, at the very least, he felt Plaintiff had some form of a chronic pain disorder, since he assessed "chronic upper thoracic region pain." AR 364. The second note (AR 361) might suggest he felt Plaintiff had myofascial pain, since he noted imaging revealed no abnormalities in the area where pain is reported, consistent with such a diagnosis.

*See* Stedmans Dictionary, *supra*. The second note also followed imaging of Plaintiff (*see* AR 366), which is a diagnostic technique (§ 404.1501(c)) and which may have formed the basis of his assessment that Plaintiff's pain as being "myofascial in nature" (AR 361). The notes are both ambiguous as to whether Dr. Abbott's assessments of myofascial pain were based on his own clinical assessment or Plaintiff's statements of symptoms, which would not be enough to demonstrate he has an impairment. *See* § 404.1521.

      Given the ambiguity in the evidence, the ALJ was required to explain why such an impairment was not present. Basic principles of administrative law require the ALJ to explain why he deviated from ALJ Ross' prior determination that Plaintiff had demonstrated myofascial pain was a severe impairment. *See Valley Hosp. Med. Ctr., Inc. v. Nat. Lab. Rels. Bd.*, 100 F.4th 994, 1002 (9th Cir. 2024) ("When an agency overrules its prior decisions, it must acknowledge the change and provide a reasoned explanation.") (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Without such an explanation, the Court cannot review the ALJ's determination on the issue. *See Brown-Hunder v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ must "set forth the reasoning behind [his] decision[] in a way that allows for meaningful review").

      This error was harmful, as additional limitations related to Plaintiff's myofascial pain syndrome may have been warranted had the ALJ found such an impairment. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (error is not harmless if Court cannot "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination") (citations omitted).

//

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 5

B.  **Law of the Case and Rule of Mandate**

However, the ALJ did not violate the law of the case doctrine, as Plaintiff argues he did (Dkt. 16 at 3), by reassessing whether myofascial pain was a medically determinable impairment. "[T]he law of the case doctrine and the rule of mandate apply to social security remands from federal court in the same way they would apply to any other case." *Stacy*, 825 F.3d 563, 567 (9th Cir. 2016).

The ALJ's reassessment of Plaintiff's impairments did violate the mandate rule, as the ALJ was authorized by Judge Fricke's mandate to "re-evaluate the medical record." AR 463; *see also Valley Hosp.*, 100 F.4th at 1001 ("[A]n agency . . . is free to decide any issues not foreclosed by the mandate.").

Nor did the ALJ's revised Step Two findings violate the law of the case doctrine. That doctrine "generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (citing *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).

Here, ALJ Ross's finding that myofascial pain was a severe impairment could not have been affirmed by Judge Fricke because that finding had been decided in Plaintiff's favor and therefore it could not have been challenged at the district court level. *Davis v. FEC*, 554 U.S. 724, 732 (2008) ("[A] plaintiff must demonstrate standing for...each form of relief sought."); *cf. Buck v. Sec'y of Health & Hum. Servs.*, 923 F.2d 1200, 1203 (6th Cir. 1991) ("If the individual has fully prevailed on his or her [social security] claim, he or she has no standing to appeal because he or she has received all the relief sought, leaving no case or controversy.").

The ALJ had discretion to revisit the determination of another ALJ that myofascial pain was a severe impairment. "'[A] court'—or, in this case, an ALJ—'has the power to revisit prior

decisions of its own . . . although as a rule [he] should be loathe to do so.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 817 (1988). "[T]he law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Id.* (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)).

C.   **Remaining Issues**

The remaining issues largely depend upon whether myofascial pain syndrome is found to be a medically determinable impairment. The ALJ relied upon examinations of Plaintiff's strength, reflexes, sensation, and range of motion, as well as x-rays of his spine and back in discounting Plaintiff's subjective testimony and the medical opinion evidence. *See* AR 378–80. As Judge Fricke noted, "[t]he ALJ's reliance on objective imaging and tests does not account for the nature of myofascial pain syndrome." AR 460. The Court therefore does not consider whether the ALJ adequately assessed Plaintiff's subjective testimony, the medical opinion evidence, and the lay witness statements.

Plaintiff requests the Court remand for an award of benefits. Dkt. 11 at 19. After considering the record, the Court concludes remand for further proceedings is the appropriate remedy, as there remain ambiguities in the medical evidence, including among medical opinions. *See Garrison v. Colvin*, 759 F.3d 995,1022 (9th Cir. 2014); AR 80–81 (assessing conflicting medical opinions, some of which were not challenged by Plaintiff and supported RFC).

Plaintiff argues SSR 24-2p, which was issued and took effect in April 2024 and might preclude Plaintiff's past relevant work from being considered at Step Four, should be applied retroactively in this case under the factors set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 268 (1994). Dkt. 16 at 9. Those factors, however, apply in interpreting whether the presumption against statutory retroactivity applies to a statute that is otherwise ambiguous about

whether it applies retroactively. *See id.* at 267, 273–74. Here, SSR 24-2p expressly does not apply retroactively. *See* SSR 24-2p n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988) ("[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result.").

Regardless, even if the Court were to apply SSR 24-2p retroactively, it would not be required to find Plaintiff disabled, as that ruling has no bearing upon whether Plaintiff would be found disabled at Step Five (a question the ALJ did not reach).

Plaintiff also requests the Court order a new ALJ be assigned to the case. Dkt. 11 at 19. He attaches an affidavit from his attorney stating that, in 36 of the 37 cases in which he has represented claimants before the ALJ, the ALJ has issued unfavorable or partially favorable determinations. Dkt. 11-1. Comparing this rate to the national average approval rate for SSA disability claims, he argues this result demonstrates bias. *Id.* He notes that 31 of those cases were in matters that already had been remanded by the district court. *Id.*

To show bias requiring recusal, plaintiff must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir.2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). "[O]pinions formed by the judge on the basis . . . of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Plaintiff's counsel's affidavit does not clear this high bar. The statistical support offered by Plaintiff's counsel relies on several assumptions, including that his cases are as meritorious as the average SSA claim; that the ALJ's approval rate matches or should match that

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 8

of the average ALJ; that claims already remanded by a district court are not more likely to result in unfavorable determinations than those which are not; and that he does not appeal cases at a rate higher than the national average.

Additionally, Plaintiff forfeited this argument by failing to raise it at the agency level. *See White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) ("failure to raise an issue 'at both [the] hearing before the ALJ and the Appeals Council' constitutes forfeiture") (citing and quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)); 20 C.F.R. § 404.940 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge *at your earliest opportunity*.") (emphasis added).

## IV.  CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 15th day of November, 2024.

Grady J. Leupold
United States Magistrate Judge